# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) Civil Action No. 13-138 |
| v. | ) ) ) |
| DAVID STILES, et al., | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

      The United States of America ("United States" or "government") filed the above-captioned case against David Stiles and Virginia Stiles (collectively the "Stiles" or "defendants") to reduce to judgment tax assessments filed against the Stiles pursuant to 31 U.S.C. § 3713, for depleting the Estate of Julia Stiles ("estate") before paying the estate's tax liability. (ECF No. 33 at 1.) Presently before this court is the United States' motion for summary judgment. (ECF No. 32.) The United States argues that it is entitled to judgment as a matter of law with respect to the Stiles' tax liabilities and to satisfy the tax liabilities the court should order the foreclosure of a tax lien the United Stated filed on property owned by the Stiles. (ECF No. 32 at 1.) After considering all the submissions, the court concludes that there is no dispute that the Stiles depleted an estate before paying the estate's tax liability. The court will GRANT the United States' motion for summary judgment and order the foreclosure of the lien.

I. FACTUAL BACKGROUND

It should be noted that the Stiles failed to submit a responsive statement of facts as required by Local Rule of Civil Procedure 56 and this court's case management order dated April 24, 2014. W.D. Pa. LCvR 56; (ECF No. 29). The factual background is to be derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A. Factual Background[1]

1. Estate Tax Liability

After Julia Stiles died in 2002, David Stiles was appointed executor of her estate. (ECF No. 35 ¶ 9.) The tax return for the estate was not filed until June 2008. (Id. ¶ 10.) On June 9, 2008, a delegate of the Secretary of the Treasury Internal Revenue Service of the United States ("IRS") assessed federal income taxes, interest, and penalties against the estate in the amount of $2,093,091.[2] (ECF No. 35 ¶ 11; ECF No. 35-4.) The estate also owed $12,936 to the Register of Wills and $110,635 to the Delaware Division of Revenue. (ECF No. 35 ¶ 12.) The estate's primary assets consisted of real estate in Wilmington, Delaware, and an investment account with Janney Montgomery Scott, LLC. (Id. ¶ 13.) Around the time of Julia Stiles' death her account with Janney Montgomery Scott, LLC., was worth $2,303,547. (Id. ¶ 14.) The real property in Delaware was sold in August 2002, for $379,000 and the proceeds were distributed shortly after

---

[1] Other undisputed facts may be discussed in the context of the legal claims where appropriate. Bielich v. Johnson & Johnson, Inc., No. 11-1635, 2014 WL 1117939, at *1 (W.D. Pa. Mar. 20, 2014).

[2] A delegate of the IRS submitted updated Certificates of Official Record to the Stiles dated June 4, 2012, and March 25, 2014, which itemized "all assessments, penalties, interest, abatements, credits, refunds, and advance or unidentifiable payments" relating to the Stiles' tax liabilities. (ECF No. 35-1; ECF No. 35-4.)

2

the sale. (Id. ¶ 15.) The IRS did not receive any proceeds from the sale of real property located in Wilmington, Delaware. (Id. ¶ 16.)

Between 2002 and 2005, David Stiles distributed approximately $775,000 from the estate to himself, and $425,000 to each of his two sisters. (Id. ¶ 19) (citing Estate of Stiles v. Lilly, No. 09C-07-198 MJB, 2011 WL 5299295, at *5-6 (Del. Super. Ct. Oct. 27, 2011). At the beginning of April 2008, the estate's investment account with Janney Montgomery Scott, LLC., was worth $1,787,660. (ECF No. 35 ¶ 20; ECF No. 35-5). In April 2008, David Stiles distributed $110,635 from the estate to the Delaware Division of Revenue. (ECF No. 35 ¶ 21; ECF No. 35-5 at 7.) Michael Stumpo, a Revenue Officer for the IRS, stated that as of March 31, 2014, the estate still owes the United States $71,762.39. (ECF No. 35 ¶ 22); (Stumpo Decl. ¶ 6).

2. Income Tax Assessed Against the Stiles

As of March 31, 2014, the IRS determined that the Stiles still owed the United States the following amounts for income tax assessments:

1. For the 2007 tax period: $4,989.07

2. For the 2008 tax period: $27,072.48

3. For the 2009 tax period: $20,298.65

4. For the 2010 tax period: $84.84

(ECF No. 35 ¶ 1); (Stumpo Decl. ¶ 1.)

Interest on the income tax assessments has been assessed under 26 U.S.C. §§ 6601(a) and (b), from the date that the Stiles' tax liabilities became due, at the rate set forth in 26 U.S.C. § 6621(a). (ECF No. 35 ¶ 2; ECF No. 35-1 at 2.) Penalties under 26 U.S.C. § 6651, for the years 2007, 2008, and 2009 have been assessed against the Stiles for their failure to timely pay the amount of tax due. (ECF No. 35 ¶ 3; ECF No. 35-1 at 2.) Penalties under 26 U.S.C. §

6654, for the years 2008 and 2009 have been assessed against the Stiles for their failure to make required estimated tax payments. (ECF No. 35 ¶ 3; ECF No. 35-1 at 2, 4.) An accuracy-related penalty has been assessed against the Stiles under 26 U.S.C. § 6662, for the year 2007. (ECF No. 35 ¶ 3; ECF No. 35-1 at 4.)

The IRS properly submitted notice and demand for payment to the Stiles. (ECF No. 35 ¶ 6; ECF No. 35-1). The Stiles failed to fully pay the tax assessments. (ECF No. 35 ¶ 7.) The total income taxes owed by the Stiles for tax years 2007, 2008, 2009, and 2010 as of March 31, 2014, is $52,445.04. (ECF No. 35 ¶ 8); (Stumpo Decl. ¶ 5).

3. The United States' Tax Lien and Foreclosure Action Against the Stiles

In May 1994, Walter R. Allen, Jr. and Donna M. Allen conveyed to the Stiles real property located at 3840 Route 40 in Washington, Pennsylvania ("Washington Property"). (ECF No. 35 ¶ 23) (citing ECF No. 35-10). In September 2009, the Stiles entered into an oil, gas, and coalbed methane gas lease with Range Resources − Appalachia, LLC. ("Range Resources"). (ECF No. 35 ¶ 24) (citing ECF No. 25 ¶ 1.) Under the lease, the Stiles receive an annual payment from Range Resources until the property begins to produce commercially viable natural resources, then the Stiles will receive one-eighth of the sales proceeds paid to Range Resources. (ECF No. 35 ¶ 25) (citing ECF No. 25-1 and ECF No. 25-2.) On June 18, 2010, the United States filed a Notice of Federal Tax Lien with the Prothonotary in Washington County, Pennsylvania against the Stiles with respect to their income tax liabilities for tax years 2007 and 2008. (ECF No. 35 ¶ 26.)

B. Procedural Background

On January 28, 2013, the government filed a complaint against the Stiles, PNC Bank, the Washington County Tax Claim Bureau, and Range Resources. (ECF No. 1.) PNC

Bank, the Washington County Tax Claim Bureau, and Range Resources have been dismissed from this case as discussed in more detail below.

1. Dismissed Parties

On May 28, 2013, a motion to extend time to effect service on PNC Bank was filed. (ECF No. 8.) On May 29, 2013, this motion was granted and the deadline for effecting service on PNC Bank was extended to June 27, 2013. On June 27, 2013, a waiver of service was returned on behalf of PNC Bank. (ECF No. 9.) On November 8, 2013, the United States requested an entry of default against PNC Bank for failing to plead or otherwise defend as provided by Federal Rule of Civil Procedure 55(a). (ECF No. 10.) On November 12, 2013, the Clerk of the Court entered default against PNC Bank. (ECF No. 11.) On December 19, 2013, the United States moved for entry of a default judgment against PNC Bank to terminate its interest in the Washington Property. (ECF No. 12.) On December 20, 2013, the court entered judgment against PNC Bank, which terminated its interest in the Washington Property. (ECF No. 14 & 15 respectively.) As a result, on December 20, 2013, PNC Bank was dismissed from this action.

After an order to show cause with respect to Washington County Tax Claim Bureau's failure to file a responsive pleading in this case, the Clerk of this court entered default against the Washington County Tax Claim Bureau for failure to appear. (ECF No. 16 & 19 respectively.) On May 22, 2014, the United States moved for an entry of default judgment against the Washington County Tax Claim Bureau to terminate its interest in the Washington Property. (ECF No. 30.) On May 28, 2014, the court granted the government's motion for a default judgment against the Washington County Tax Claim Bureau. (ECF No. 36.) On May 29, 2014, the Washington County Tax Claim Bureau was dismissed from this action.

On April 1, 2013, Range Resources filed an answer to the government's complaint. (ECF No. 5.) On April 3, 2014, Range Resources filed a stipulation and consent order with the United States concerning the oil, gas, and coalbed methane lease on the Washington Property entered into by Range Resources and the Stiles. (ECF No. 25.) On April 4, 2014, the stipulation and consent order was adopted by the court accepting the respective parties understanding that the government's tax lien against the Stiles did not attach to the property rights conveyed to Range Resources. (ECF No. 26 ¶ 9(a).) As a result, during a status conference held on April 7, 2014, Range Resources was dismissed from this action.

2. The Stiles

On May 23, 2014, the United States filed a motion for summary judgment and a brief in support of its motion for summary judgment, (ECF No. 32 and 33), and a concise statement of material facts. (ECF No. 35.) On July, 28, 2014, the Stiles filed their response in opposition to the government's motion for summary judgment and a brief in support of their opposition to the government's motion for summary judgment. (ECF No. 42 and 43 respectively.) On July 30, 2014, the United States filed a reply in support of their motion for summary judgment. (ECF No. 45.) Having been fully briefed, the government's motion for summary judgment is ripe for disposition.

II. Standard of Review

Summary judgment is appropriate if the record shows that there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the

entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. Id. at 248–49.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. Liberty Lobby, 477 U.S. at 255; Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007); Doe v. Cnty. of Centre, PA, 242 F.3d 437, 446 (3d Cir. 2001); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Liberty Lobby, 477 U.S. at 248–49.

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. Celotex, 477 U.S. at 323; Aman v. Cort Furniture

7

Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by demonstrating that there is an absence of evidence to support the nonmoving party's case. Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (citing Celotex, 477 U.S. at 325).  A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements. Celotex, 477 U.S. at 322–23.  Once the movant meets that burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Liberty Lobby, 477 U.S. at 247–48; Celotex, 477 U.S. at 323–25.  If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249.

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' " Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

III. DISCUSSION

   A. Arguments Presented

   The United States filed this action to reduce to judgment the tax assessments against the Stiles for tax years 2007 through 2010 for depleting an estate before paying the estate's tax liabilities. (ECF No. 33 at 1.) The United States seeks to foreclose the tax lien, relating to the income tax assessments, and sell property located in Washington, Pennsylvania. (Id.) The United States contends that there are no genuine disputes about any material fact and it is entitled to judgment as a matter of law. (ECF No. 32 at 1.) The United States argues that an IRS determination of an unpaid tax liability " 'is entitled to a legal presumption of correctness' and establishes a *prima facie* case of tax liability." (ECF No. 33 at 2.) (citing United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002)); see United States v. Green, 201 F.3d 251, 253 (3d Cir. 2000) ("[a]ssessments are presumed to be valid, and establish a *prima facie* case of liability against a taxpayer"). The United States contends that the Stiles did not raise a defense to the tax liabilities assessed against them, but only offer speculative arguments that the United States' records of their prior tax payments are incorrect. (ECF No. 45 at 2.) The United States argues that the Stiles were credited for payments they made, including those payments made during their bankruptcy proceedings. (Id.)

   The Stiles responded to the government's motion for summary judgment by alleging that granting the motion will preclude them the "opportunity to place evidence of payments into the record to refute [the amount of] the tax claims of the [United States]." (ECF No. 43 at 2.) The Stiles contend that the actions taken by the United States are "excessive and unnecessary in the instant case as payments have, and will continue, to be forthcoming." (Id. at

2-3.) The Stiles assert that the estate has long been depleted through spoilage because they detrimentally relied on the advice of their counsel. (Id. at 3.)

The court must grant the government's motion for summary judgment because the Stiles failed to present a material fact that is in dispute. First, the Stiles' failed to submit a responsive statement of facts to dispute the government's factual position. Second, the Stiles failed to factually support their allegation that payments they submitted to the government were not reflected on the record. The Stiles had ample opportunity to place evidence of the alleged payments, i.e. the amount of the alleged payments or when they were made, into the record to refute the tax claims of the United States. Without submitting factual evidence to support their claims, their claims are speculative and cannot be credited by the court. The United States is entitled to judgment as a matter of law and its motion for summary judgment will be granted.

B. <u>Stiles' Failure to File a Responsive Statement of Facts or Point to Evidence to Support their Claims</u>

As an initial matter, the United States argues that "because the Stiles failed to file a responsive statement of facts, all of the facts listed in the United States' statement are deemed admitted." (ECF No. 45 at 1.) The court's requirements for summary judgment motions are provided in Local Rule of Civil Procedure 56. Rule 56(B) provides:

> **Motion Requirements.** The motion for summary judgment must set forth succinctly, but without argument, the specific grounds upon which the judgment is sought and must be accompanied by the following:
>
> Local Rule of Civil Procedure 56(C) provides:
>
> **Opposition Requirements**. Within 30 days of service of the motion for summary judgment, the opposing party shall file:
>   1. **A Responsive Concise Statement**. A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:

> a. admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material... .

Local Rule of Civil Procedure 56E provides:

> **Admission of Material Facts.** Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

W.D. Pa. LR. LCvR 56(B); (B)(1); E. On April 24, 2014, the court issued a case management order that provided that the Stiles "shall file [their] opposition in accordance with the requirements of Local Rule 56.1C on or before June 26, 2014, with [a] respons[ive] concise statement of facts... ." (ECF No. 29 at 1.) The court's case management order and the Local Rules of Civil Procedure required the Stiles to submit a responsive statement of facts. See United States v. Gregg, Civ. No. 12-322, 2013 WL 6498249, at *4 (W.D. Pa. Dec. 11, 2013) (finding that *pro se* litigants, who are afforded a less stringent standard of formal pleadings than those drafted by lawyers, failed to adhere to local rules resulting in an admission to the factual statements made by the United States).

In the instant action, the Stiles, who have representation, failed to file a responsive statement of material facts. Without asserting their denial to the facts submitted by the United States, the Stiles acquiesced to the record presented by the government. Id. Additionally, the Stiles' submissions fail to cite any evidence to support their opposition to the government's motion. Although the Stiles contend that granting summary judgment will preclude them from entering evidence of their previously uncounted payments into the record, the Stiles do not explain why, to this point, they have not submitted factual support for their contention. To

11

survive summary judgment it was the Stiles' duty to "demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." Celotex, 477 U.S. at 331 (citing Fed. R. Civ. P. 56(e), (f)). The Stiles failed to demonstrate sufficiently to the court that the facts submitted by the United States were in question. Without the presentation of "significantly probative" factual allegations, e.g. the amount of uncounted payments, what dates these payments were made, or any other argument to bolster the contention, the Stiles' argument remains speculative. Liberty Lobby, 477 U.S. at 249.

The Stiles' failure to offer responsive facts in a responsive statement of facts or otherwise in their submissions results in an admission to the facts presented by the United States. The facts stated by the government will be deemed admitted by the Stiles, but will be viewed in the light most favorable to them, as the nonmoving party. Id. at 255.

C. Tax Liability

"The United States can establish a *prima facie* case in support of the tax liability charged in the complaint when it introduces into evidence the certified copies of the certificates of assessment." United States v. Stuler, No. 08-273, 2010 WL 306996, at *4 (W.D. Pa. Jan. 26, 2010), aff'd, 396 F. App'x 798 (3d Cir. 2010) (citing Janis v. United States, 428 U.S. 433, 440 (1976)). "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness – a presumption that can help the Government prove its case against a taxpayer in court." Fior D'Italia, Inc., 536 U.S. at 242; see Stuler, 2010 WL 306996, at *4 ("In addition, an affidavit filed with the Court, signed by an officer of the Internal Revenue Service, which details the defendant's total tax liability, including interest and penalties, is entitled to a presumption of correctness.") (citing Psaty v. United States, 442 F.2d 1154, 1159 (3d Cir. 1971)).

Once a *prima facie* case has been made, "the taxpayer bears the ultimate burden of proving, by a preponderance of the evidence, that [the IRS's] assessment is erroneous." Francisco v. United States, 267 F.3d 303, 319 (3d Cir. 2001). "Unless a defendant in a collection suit comes forward with evidence of an error in the computations, he cannot survive a motion for summary judgment." Stuler, 2010 WL 306996 at *4.

Here, the government sufficiently established its *prima facie* case. Michael Stumpo, a Revenue Officer for the IRS, personally attested to the correctness of the tax assessments made against the Stiles and the government provided the court certified copies of the certificates of assessment. See (Stumpo Decl. ¶ 1); (ECF No. 35-1; ECF No. 35-4). Having taken the proper steps to assert this presumption, the government will be afforded its benefit and the Stiles must overcome the presumption by proving by a preponderance of the evidence that the IRS's assessments are erroneous.

1. The Stiles Personal Liability for Depleting the Estate

"The federal insolvency statute, 31 U.S.C. § 3713, 'provides that when a person is insolvent or an estate has insufficient assets to pay all of its debts, priority must be given to debts due the United States.'" United States v. Tyler, 528 F. App'x 193, 200-02 (3d Cir. 2013) (citing United States v. Coppola, 85 F.3d 1015, 1019 (2d Cir. 1996)). Personal liability may be imposed upon a fiduciary of an estate in accordance with the federal statutes, 31 U.S.C. § 3713(b) and 26 U.S.C. § 6901(a)(1)(B). Under the federal priority statute, a fiduciary "paying any part of a debt of ... [an] estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b).

"Personal liability can attach, to the extent of the distribution, if the government establishes three elements: (1) the fiduciary distributed assets of the estate; (2) the distribution

rendered the estate insolvent; and (3) the distribution took place after the fiduciary had actual or constructive knowledge of the liability for unpaid taxes." United States v. Tyler, No. 10-1239, 2012 WL 848239, at *10 (E.D. Pa. Mar. 13, 2012). "The purpose of imposing personal liability on estate representatives 'is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid.' " Tyler, 528 F. App'x at 201 (citing King v. United States, 379 U.S. 329, 337 (1964)). "Of course, '[i]n order for liability to attach, the executor must have knowledge of the debt owed by the estate to the United States or notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt owed before making the challenged distribution or payment.' " Id. (citing Coppola, 85 F.3d at 1020). The Third Circuit Court of Appeals stated:

> In recognition of the insolvency statute's "broad purpose of securing adequate revenue for the United States Treasury, courts have interpreted it liberally." [Coppola, 85 F.3d at 1020.] With respect to "the type of payments or 'distributions' from the estate for which an executor may be held liable," "a fiduciary, *e.g.,* an executor, may be held liable under the federal insolvency statute for a distribution of funds from the estate that is not, strictly speaking, the payment of a debt." Id. (alteration and internal quotation marks omitted). He may, for example, be held liable for "stripp[ing]" an otherwise solvent estate "of all of its assets and render[ing] it insolvent" by "provid[ing] for the distribution of all of the estate assets" to the heirs of the estate. Id. (internal quotation marks omitted).

Id.

Here, the government argues that the Stiles are personally liable under 31 U.S.C. § 3713 for depleting an estate before paying the estate's tax liability. (ECF No. 33 at 1.) The government alleges that the estate held assets worth approximately $2,682,547 around the time of Julia Stiles' death. (ECF No. 33 at 5) (citing ECF No. 35 at 13-15). The government argues that after David Stiles sold the real property located in Delaware and made distributions from the

14

investment account, the estate's liabilities exceeded its assets. See (ECF No. 33 at 5) ("by the time David Stiles filed the Estates' tax return, he had already significantly decreased the value of the Estate by selling the real property and reducing the investment account's value"). The government contends that the distributions out of the estate rendered the estate insolvent. (ECF No. 33 at 5.)

David Stiles admitted, through testimony, that he knew in 2002 about the estate's federal tax liabilities. (ECF No. 35 ¶ 17); see Estate of Stiles, 2011 WL 5299295, at *6 ("[David] Stiles testified at trial that he knew as of 2002 that estate taxes would have to be paid in addition to the yearly fiduciary income taxes, but he made no affirmative efforts to pay those taxes or learn of the deadlines by which they should have been paid."). On June 18, 2003, during a telephone call with his lawyer, David Stiles was informed that the estate's tax returns were late. Estate of Stiles, 2011 WL 5299295, at *6. Based on the record before the court, David Stiles knew about the estates' tax liability, at the latest, on June 18, 2003. David Stiles continued to distribute assets out of the estate through 2006.[3] (ECF No. 35 ¶ 19.) The record before the court shows that David Stiles had knowledge of the estate's tax liability and continued to distribute assets out of the estate rendering it insolvent. See Tyler, 528 F. App'x, at 200-02.

The government sufficiently established its *prima facie* case against the Stiles and the Stiles failed to show that the government's assessments were erroneous. The government performed tax assessments for the tax years 2007 through 2010 and provided the Stiles with notice and demand for payment. (ECF No. 35 ¶ 1, 6-7.) The Stiles' argument that they "will not

---

[3] "From 2002 to 2005, Stiles distributed money from the estate to himself and his sisters, Cynthia Boyd and Jennifer Takahashi in equal amounts, totaling $425,000.00 each. Then Stiles made two distributions to himself without telling his sisters, one in 2005 for $100,000.00 and one in 2006 for $250,000.00. Stiles distributed a total of $775,000.00 to himself, and a total of $1,625,000.00 amongst the three." Estate of Stiles, 2011 WL 5299295, at *1.

be afforded an opportunity to place evidence of payments into the record to refute the tax claims of the US" misinterprets their duty at this stage of the proceeding. (ECF No. 43 at 2.)

The Stiles were afforded ample time to present evidence of these allegedly uncounted payments. The Stiles failed to file a responsive statement of facts to support this contention, cite to evidence of record in support of any alleged uncounted payments, or provide a date or an amount for the alleged payments within their submissions. The record provided to the court shows that the Stiles were credited for their payments. (ECF No. 35 Ex. B.) Without any factual support for plaintiffs' allegation, the court cannot give this argument credence. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." United States v. All Right, 392 F. App'x 85, 92-93 (3d Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). A plaintiff cannot avoid summary judgment with speculation; he or she must provide competent evidence from which a rational trier of fact can find in his or her favor. Corliss, 247 F. App'x at 354.

D. Defense of Detrimental Reliance on Counsel

The Stiles argue that they detrimentally relied on advice of their Delaware counsel when they made the distributions that led to the estate's insolvency. (ECF No. 43 at 3.) In United States v. Renda, 709 F.3d 472, 484-85 (5th Cir. 2013), cert. denied, 134 S. Ct. 618, (2013), the court of appeals discussed this argument and stated:

> First, the statute does not provide for an attorney-reliance exception. Over the years, courts have read into the Priority Statute the "knowledge" and "insolvency" requirements to protect innocent representatives. We decline to announce a further exception. Second, a contrary interpretation would create an exception to the Priority Statute that might swallow the rule. As long as a debtor's representative were to receive advice from counsel that the debtor had some basis to contest the government's

> claim, the representative could distribute the debtor's assets to non-federal creditors. Such an interpretation would defeat the purpose of § 3713 (b) to ensure that debts of the United States are repaid first. See Moore, 423 U.S. at 81, 96 S.Ct. 310 (explaining that the personal liability provision is what "g[ives] the priority teeth"); King, 379 U.S. at 337, 85 S.Ct. 427 (noting that the purpose of the personal liability provision "is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid").

Renda, 709 F.3d at 484. As the executor, David Stiles was responsible for managing the assets of the estate. see United States v. Boyle, 469 U.S. 241, 251 (1985) ("When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice.... By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute."). Here, David Stiles was aware that the estate's tax returns had not been filed and he failed to take action to remedy the situation or inquire into it as "a prudent person of ordinary intelligence in his position would have so inquired." Estate of Stiles, 2011 WL 5299295, at *5.

Relying on the poor advice from an attorney is not a defense. It is unfortunate that the Stiles received poor legal advice; however, poor advice does nothing to mitigate their liability for the decisions David Stiles made in managing the estate.

E. Foreclosure

The government asks that its lien upon the Washington Property be foreclosed and the real property sold to pay the Stiles' outstanding tax liabilities. (ECF No. 33 at 6.) "Under 26 U.S.C. § 6321, a delinquent taxpayer's property is subject to forfeiture… ." Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 233 (2008). "The governing statute, 26 U.S.C. § 6321, provided that:

'[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.' " Estate of Gibbs v. United States, 161 F.3d 242, 246 (3d Cir. 1998). A tax lien "shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322 (1988). " 'A lien continues unabated regardless of sale, so long as it is properly recorded.' " United States v. Avila, 88 F.3d 229, 233 (3d Cir. 1996) (quoting Han v. United States, 944 F.2d 526 (9th Cir.1991)).

A tax lien upon all the Stiles' property arose when they neglected or refused to pay the assessed taxes after the government's demand. "The statutory language 'all property and rights to property,' appearing in § 6321 (and, as well, in § 6331(a) and, essentially, in § 6332(a) …) is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-20 (1985) (citing Glass City Bank v. United States, 326 U.S. 265, 267 (1945)). As discussed above, the Stiles did not respond to, or mention, the government's request for a foreclosure on the Washington Property within their pleadings. The Stiles failed to put forth any evidence or authority that could oppose the government's position. Accordingly, the tax lien is valid and the court will order the foreclosure of the Washington Property and the Stiles' interest in the lease entered into with Range Resources pursuant to 28 U.S.C. §§ 2001 and 2002. (Id.)

V. CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment is GRANTED. The court will enter the appropriate orders reducing the tax assessments against the Stiles to judgment and foreclosing the tax liens against the real property and interest of the Stiles in the Washington Property.

Dated:   December 2, 2014                               /s/ *Joy Flowers Conti*
                                                        Joy Flowers Conti
                                                        Chief United States District Judge